BRONSON LAW OFFICES, P.C.
Counsel for the Debtors
480 Mamaroneck Ave.
Harrison, NY 10528
(914) 269-2530 (PH)
(888) 908-6906 (Fax)
H. Bruce Bronson, Esq.
hbbronson@bronsonlaw.net

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
In re:

                               Chapter 11

Krishna Bhagwandeen and
Mahadai Bhagwandeen                      Case No.:25-40906 (ESS)
                    Debtors.
-------------------------------------------------------x

## DISCLOSURE STATEMENT

Krishna Bhagwandeen and Mahadai Bhagwandeen, Debtors and Debtors-in-Possession (the "**Debtors**"), submit this amended disclosure statement (the "**Disclosure Statement**"), pursuant to Section 1125 of Title 11 of the United States Code (the "**Bankruptcy Code**" or "**Code**"), in connection with their request for confirmation of the Debtors' accompanying plan of reorganization of even date (the "**Plan**"). Unless otherwise defined, all capitalized terms contained in the Plan shall have the same meaning for purposes of this Disclosure Statement. The Plan has been filed with the United States Bankruptcy Court for the Eastern District of New York (the "**Bankruptcy Court**") and is attached hereto as "**Exhibit A**." The Bankruptcy Court approved this Disclosure Statement, with non-material changes, as containing "adequate information" of a kind, and in sufficient detail, to enable a hypothetical reasonable investor typical of the Debtors' creditors to make an informed decision whether to accept or reject the Plan. The Court will consider Confirmation on July *****, 2026 at 10:00 a.m.

Accompanying this Disclosure Statement are copies of the following documents

("**Exhibits A, B and C**"):

    A. **The Plan.**
    B. **Financial Projections of the Debtors.**
    C. **Sample Ballot.**

## PLAN SUMMARY

The Plan is designed as a mechanism for the financial reorganization of the Debtors. The

Debtors will make payments to the holders of Allowed Claims in the classes set forth herein.

Pursuant to the Plan, there will be three Classes of creditors as follows:

**Class 1**: consists of all Allowed Priority Claims except Priority Tax Claims.

**Class 2**: consists of all Allowed Secured Claims.

**Class 3**: consists of all Allowed Unsecured Claims.

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense

Claims and Priority Tax Claims have not been classified and thus are excluded from the foregoing

classes.

## THE CONFIRMATION PROCESS

### The Confirmation Hearing

Pursuant to Section 1128 of the Bankruptcy Code, the Bankruptcy Court will consider the

Debtors' Plan for Confirmation on July **, 2026, at 10:00 a.m. (the "**Confirmation Hearing

Date**"). The Bankruptcy Court has directed that objections, if any, to approval of the Plan be filed

and served **so as to be received** on or before seven days before the Confirmation Hearing Date.

At the Confirmation Hearing, the Bankruptcy Court will determine whether the

confirmation requirements of the Bankruptcy Code have been satisfied. The Debtors believe that

the Plan satisfies all applicable requirements of Section 1129(a) of the Bankruptcy Code.

### The Purpose of this Disclosure Statement

This Disclosure Statement and the accompanying Ballot, if the creditor is entitled to vote, are being furnished to the Debtors' known creditors pursuant to Section 1125(b) of the Bankruptcy Code in connection with a solicitation of acceptances of the Chapter 11 Plan from those entitled to vote on the Plan. The Plan is incorporated herein by reference. You should read this Disclosure Statement and the Plan carefully. In any conflict between the Plan and this Disclosure Statement, the Plan will control.

**Disclaimer**

**NO PERSON MAY BE GIVEN ANY INFORMATION OR MAKE ANY REPRESENTATIONS NOT CONTAINED IN THIS DISCLOSURE STATEMENT, REGARDING THE PLAN OR THE SOLICITATION OF ACCEPTANCES OF THE PLAN. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THAT DATE. ALL CREDITORS SHOULD READ CAREFULLY AND CONSIDER FULLY THE DISCLOSURE STATEMENT BEFORE VOTING FOR OR AGAINST THE PLAN.**

**AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT, LIABILITY, STIPULATION, OR WAIVER, BUT RATHER AS THE EQUIVALENT OF A STATEMENT MADE IN FURTHERANCE OF SETTLEMENT NEGOTIATIONS.**

**THIS DISCLOSURE STATEMENT SUMMARIZES CERTAIN PROVISIONS OF THE PLAN, STATUTORY PROVISIONS, DOCUMENTS RELATED TO THE PLAN, EVENTS IN THE DEBTORS' CHAPTER 11 CASE, AND FINANCIAL INFORMATION.**

**ALTHOUGH THE DEBTORS BELIEVE THAT THE PLAN AND RELATED DOCUMENT SUMMARIES ARE FAIR AND ACCURATE, SUCH SUMMARIES ARE QUALIFIED TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS. EXCEPT WHERE OTHERWISE SPECIFICALLY NOTED, FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED FROM THE DEBTORS' BOOKS AND RECORDS AND PUBLIC PLEADINGS. ALTHOUGH DILIGENT EFFORTS HAVE BEEN MADE TO PRESENT ACCURATE AND COMPLETE INFORMATION, THE DEBTORS ARE UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION IS WITHOUT SOME INACCURACY OR OMISSION.**

**THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS**

**INCLUDED FOR PURPOSES OF SOLICITING ACCEPTANCES OF THE PLAN AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN.**

**THIS DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING INVOLVING THE DEBTORS OR ANY OTHER PARTY, NOR SHALL IT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST THE DEBTORS. ANY VALUE GIVEN AS TO ASSETS OF THE DEBTORS IS BASED UPON AN ESTIMATION OF SUCH VALUE. YOU ARE URGED TO CONSULT YOUR OWN COUNSEL AND FINANCIAL AND TAX ADVISORS IF YOU HAVE ANY QUESTIONS OR CONCERNS REGARDING TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE PLAN ON HOLDERS OF CLAIMS.**

**THE DISCLOSURE STATEMENT ORDER, A COPY OF WHICH ACCOMPANIES THIS DISCLOSURE STATEMENT, SPECIFIES THE DEADLINES, PROCEDURES, AND INSTRUCTIONS FOR VOTING TO ACCEPT OR REJECT THE PLAN AND FOR FILING OBJECTIONS TO FINAL APPROVAL OF THE DISCLOSURE STATEMENT AND/OR CONFIRMATION OF THE PLAN.**

## VOTING INFORMATION

Class 3B is Impaired and entitled to vote on the Plan. Class 1, Class 2, and Class 3A are not Impaired and are not entitled to vote to accept or reject the Plan.

## INTRODUCTION

The Debtors filed this bankruptcy case (the "**Petition**") on February 21, 2025 (the "**Petition Date**"). The Debtors own a furniture business and believe they have sufficient income to confirm a plan.

Debtors were current with their mortgage payments when they filed for bankruptcy and continue to be current with their mortgage payments and intend to continue to pay at the contract rate.

The Debtors have nonexempt equity in their home of approximately $150,000 and will make payments under the Plan of at least $150,000 to their unsecured creditors.

-4-

**SIGNIFICANT EVENTS DURING CHAPTER 11 CASE**

The Debtors have continued to operate their furniture store business and receive compensation from that business. The Bar Date was July 18, 2025, and the government bar date was November 17, 2025. The bar date order was signed on May 19, 2025 [Dkt. No. 20] (the "**Bar Date Order**").

Bronson Law Offices, P.C. has been retained as general bankruptcy counsel for the Debtors and the retention order was signed on June 4, 2025 [Dkt. No. 21].

By the Confirmation Hearing Date, the Debtors will have filed all monthly operating reports required to be filed and all U.S. Trustee fees will be paid.

**PLAN SUMMARY**

**UNCLASSIFIED ADMINISTRATIVE EXPENSE
CLAIMS, U.S. TRUSTEE FEES AND PRIORITY TAX CLAIMS**

Pursuant to section 1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Expense Claims and Priority Tax Claims, which shall be afforded the following treatment:

1. **Administrative Expense Claims**. All Allowed Administrative Expense Claims shall be paid in full in Cash on the later of the Effective Date and entry of an order of the Bankruptcy Court allowing the same, unless otherwise agreed upon by the parties. The primary Administrative Expense Claims could consist of fees approved by the Court that are payable to bankruptcy counsel. The amounts of Administrative Expense Claims are not currently known and consist mainly of the Debtors' legal fees, which are expected to be approximately $15,000.

2. **Priority Tax Claims**. Allowed Priority Tax Claims shall be paid in full in Cash on the Effective Date of the Chapter 11 Plan as provided in their respective proofs of claim.

There is only one Priority Tax Claim of $669.00 that will be paid in Cash to the New York State Department of Taxation and Finance on the Effective Date. The Internal Revenue Service has filed a $0 Claim.

3. **U.S. Trustee Fees.** Any unpaid U.S. Trustee Fees shall be paid in Cash on the Effective Date.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

1.        **Class 1-Allowed Priority Claims.** Class 1 consists of all Allowed Priority Claims, other than Priority Tax Claims.

**Treatment-** The Allowed Priority Claims, if any, shall be paid in full in Cash on the Effective Date. There are no known priority claims other than Priority Tax Claims, as discussed above.

**Right to Vote.** Class 1 is not Impaired under the Plan and therefore is not entitled to vote to accept or reject the Plan.

2. **Class 2-Allowed Secured Claims.** Class 2 consists of all Allowed Secured Claims. There is one Secured Claim for the First Mortgage on the Debtors' residence payable to NewRez LLC d/b/a Shellpoint Mortgage Servicing ("**Secured Lender**") in the Allowed Amount of $98,688.97 (the "**Mortgage**"), which is not in arrears and will be paid in accordance with the contract, i.e., note and mortgage.

**Treatment:** The Mortgage will continue to be paid in accordance with its contractual terms.

**Right to Vote.** The Allowed Secured Debt will be payable in accordance with its terms and therefore is not impaired and will not be entitled to vote.

3. **Class 3-Allowed Unsecured Claims.** Class 3 Allowed Unsecured Claims have been broken down into two subclasses, Class 3A and Class 3B, and consist of the following,

-6-

subject to reduction by objection of the Debtors or agreement of the parties within 90 days of the Effective Date:

**CLASS 3A**

| Creditor | POC or Petition # | Amount of Claim | Allowed/Not Allowed | Monthly Amount to Be Paid |
|---|---|---|---|---|
| American Exp | POC 2 | $1,298.39 | Allowed | $21.64 |
| American Exp | POC 3 | $885.49 | Allowed | $14.80 |
| JP Morgan Chase | POC 3-1 | $1,125.97 | Allowed | $18.80 |
| JP Morgan Chase | POC 6-1 | $11,698.07 | Allowed | $195.00 |
| Discover Bank | POC 7 | $7,085.23 | Allowed | $118.09 |
| Capital One | POC 8 | $281.45 | Allowed | $281.45 |
| Capital One | POC 11-1 | $4,431.13 | Allowed | $73.85 |
| Verizon | POC 12-1 | $1,111.58 | Allowed | $18.53 |
|  | Total | **$27,917.31** |  | **$742.16** |

**CLASS 3B**

| Creditor | POC or Petition # | Amount of Claim | Allowed/Not Allowed | Monthly Amount to Be Paid |
|---|---|---|---|---|
| Franpo Realty, LLC | POC 12-1 | $135,555.99 (reduced to $125,000 by agreement) | Allowed | $2,084 |

**Treatment-** The Class 3A Allowed Unsecured Claims will be paid monthly (except for the de minimis Claim of Capital One for $281.45, which will be paid on the Effective Date) over approximately 60 months, beginning on the Effective Date. The Class 3B Allowed Unsecured

Claim will be payable monthly over 60 months beginning on the Effective Date, based upon agreement with the Creditor.

**Right to Vote.** Class 3A is Unimpaired and not entitled to vote to accept or reject the Plan because the Claims will be paid in full over a five-year period. Class 3B is Impaired and entitled to vote. To the extent there are any holders of claims that were listed in the Schedules as disputed that have failed to file a proof of claim, they will not be entitled to a distribution and are not included herein. Unless otherwise ordered by the Bankruptcy Court for cause, only the Debtors shall have exclusive standing to file and prosecute objections to Claims. All such objections shall be filed and served no later than 90 days after the Effective Date in accordance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

## REPLACEMENT LIENS

The Secured Creditor shall receive replacement liens without further action on its part to the extent necessary to secure its interest against the Reorganized Debtors. The Secured Creditor shall be entitled to file all necessary documents to protect its secured interests, and the Debtors will cooperate with all reasonable requests for this purpose.

## IMPLEMENTATION OF THE PLAN

Payments to holders of Allowed Claims under the Plan will be made by the Debtors/Reorganized Debtors from (a) Cash on hand as of the Effective Date; and (b) Cash realized from the Debtors'/Reorganized Debtors' income from their furniture business. The Debtors believe based on their salaries and their ownership of their furniture store, they will have sufficient funds to make the payments.

Professional fees for services rendered and expenses incurred by the Debtors' attorney subsequent to the Effective Date in connection with the Plan or the Debtors'/Reorganized

Debtors' Chapter 11 case may be paid by the Debtors without prior court approval, to the extent that Section 1123(a)(6) of the Bankruptcy Code is applicable.

The Plan may be altered or modified by the Debtors at any time before the substantial consummation of the Plan, as provided in Sections 1101(a) and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, which authorizes the proponent of a plan of reorganization to modify such plan at any time prior to confirmation of the plan so long as the plan, as modified, continues to meet certain requirements therein.

### <u>TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>

**Executory Contracts and Unexpired Leases.** To the extent the Debtors are parties to any executory contracts or unexpired leases which have not otherwise been assumed or rejected prior to the Effective Date, the Confirmation Order shall constitute an Order authorizing the assumption of such Executory Contracts or unexpired leases pursuant to Section 365 of the Bankruptcy Code.

In the event any lease or executory contract is to be assumed that is not paid currently, the Debtors will, as a condition of assumption, cure the default by making payment of the amounts owed. Any party objecting to the assumption or cure amount shall have until ten days prior to the Confirmation Hearing Date to oppose such assumption or cure amount. The Debtors are not aware of any executory contracts or unexpired leases under which they are lessees and accordingly believe that there are no cure amounts under Section 365 of the Bankruptcy Code.

**This paragraph constitutes notice to any party having an executory contract or unexpired lease with the Debtors that the Debtors will pay no cure amounts unless (a) the non-Debtor party files and serves a statement setting forth the cure amount and objecting to the Plan on or before the date to object to Confirmation of the Plan or (b) the Court awards such cure amount.**

## RETENTION OF JURISDICTION

The Plan contains provisions providing for the retention of jurisdiction by the Bankruptcy Court primarily to enforce and interpret the Plan, ensure that the Plan is fully consummated, determine matters pending before the Effective Date, allow or disallow Claims, grant or deny professional fee applications, enter such orders as may be necessary or appropriate to implement or consummate the Plan, and enter a Final Decree concluding the bankruptcy case.

After the entry of the Confirmation Order, the Bankruptcy Court shall retain jurisdiction until the bankruptcy case is closed to perform the following actions:

(a) Ensure that the Plan is fully consummated;

(b) Resolve all matters arising under or relating to the Plan, including, without limitation, its enforcement and interpretation;

(c) Allow, disallow, determine, liquidate or classify any Claims;

(d) Grant or deny all applications for allowance of compensation and reimbursement of expenses by the professionals retained in the bankruptcy case;

(e) Resolve any motions or applications still pending prior to the Effective Date;

(f) Enter such orders as may be necessary or appropriate to implement or consummate the Plan and all contracts, deeds, and instruments made or created in furtherance of the Plan or to enforce all orders, judgments and rulings entered in connection with the bankruptcy case, including an order granting the Debtors' discharge upon certification of the completion of all distributions under the Plan; and

(g) Enter a discharge order and Final Decree concluding the bankruptcy case.

## ACCEPTANCE BY THE IMPAIRED CLASSES

Under the Bankruptcy Code, the Plan may be confirmed if each Impaired class of Claims accepts the Plan and the Plan satisfies the other requirements of Section 1129(a) of the

-10-

Bankruptcy Code. A Class is Impaired if the legal, equitable or contractual rights attached to the claim of that Class are modified other than by curing defaults and reinstating maturities or by payment in full in Cash. Here, only Franpo Realty is impaired and entitled to vote.

## OTHER PLAN REQUIREMENTS FOR CONFIRMATION

At the Confirmation Hearing the Bankruptcy Court will determine whether the requirements of Section 1129(a) of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order of Confirmation of the Plan. These requirements include determinations by the Bankruptcy Court that: (i) the Plan has classified Claims in a permissible manner, (ii) the contents of the Plan comply with various technical requirements of the Bankruptcy Code, (iii) the Debtors have proposed the Plan in good faith, (iv) the Debtors have made disclosures concerning the Plan that are adequate and include information concerning all payments made or promised in connection with the Plan, (v) the Plan is in the "best interest" of all creditors, in that it provides as good a recovery to the Creditors as a liquidation under Chapter 7 of the Bankruptcy Code, (vi) the Plan is feasible, and (vii) the Plan has been accepted by the requisite number and amount of creditors in each class entitled to vote on the Plan or that the Plan may be confirmed without such acceptances. The Debtors believe that all of these conditions have been or will be met prior to the Confirmation Hearing.

**Best Interest Test**. The so-called "best interest" test requires that each Impaired Claimant either (a) accepts the Plan or (b) receives or retains under the Plan property of a value, as of the Effective Date of the Plan, that is not less than the value such entity would receive if the Debtors were to be liquidated under Chapter 7 of the Bankruptcy Code.

Without Plan confirmation, a Chapter 7 trustee may be appointed to attempt to sell the Debtors' assets. The Debtors' post-Petition Date income is not available to creditors in a Chapter 7 case, because, unlike in Chapter 11 and under the Plan, it is not property of the bankruptcy

estate in a Chapter 7 case. The Debtors' non-exempt assets have a value of approximately $150,000, while the Claims to be paid total approximately $152,918. Accordingly, the Plan provides a recovery, with a present value in an amount substantially greater than if a Chapter 7 trustee were appointed, taking into account the fact that the Chapter 7 trustee would have substantial fees and commissions related to selling the Debtors' home and much less than $150,000 is likely to be realized.

**Feasibility.** For the Plan to be confirmed, it must be demonstrated that consummation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of the Debtors. Because the Debtors believe they have adequate income from their salaries and furniture business to carry out the Plan, the Debtors believe they are likely to be able to consummate the Plan. They contend that their salaries from their wholly owned business plus any profits that the business may generate are sufficient to pay the Claims as set forth in the Plan described above.

**Liquidation analysis**. Because all Creditors are will be paid in full (except as otherwise agreed), Claimants will receive at least as much as they would have in a hypothetical Chapter 7 case.

**Projected "Disposable Income" Test.**

Pursuant to Section 1129(a)(15)(B) of the Bankruptcy Code, if the holder of an Allowed Unsecured Claim objects to the confirmation of the Plan, the Debtors will be required to demonstrate that the value of the property to be distributed under the Plan is not less than their projected disposable income for the five (5) year period following the Effective Date. Based upon the projections attached to this Disclosure Statement as "**Exhibit B"**, the Debtors have met the Projected "Disposable Income" Test.

-12-

**Confirmation Without the Acceptance of Each Impaired Class.**

In the event that all Impaired classes do not accept the Plan, the Bankruptcy Court may nevertheless confirm the Plan under Section 1129(b) at the Debtors' request if (i) all other requirements of section 1129(a) of the Bankruptcy Code are satisfied, (ii) at least one impaired Class of Claims votes to accept the Plan without regard to any vote cast on account of a Claim held by "insiders" (as defined in the Bankruptcy Code) and (iii) as to each impaired Class which has not accepted the Plan, the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such non-accepting Class. **Here, there is only one impaired class that has indicated that it would vote in favor of the Plan.**

A plan "does not discriminate unfairly" if the legal rights of a non-accepting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are similar to those of the non-accepting class, and no class receives payments in excess of that which it is legally entitled to receive for its claims or Interests. The Debtors assert that the Plan meets these tests.

## CAUSES OF ACTION

The Debtors are not aware of any causes of action that their bankruptcy estate may have, including actions under Chapter 5 of the Bankruptcy Code. Nevertheless, they fully reserve their right to pursue any causes of action post-confirmation, and any setoff rights arising thereunder.

## FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

(a) The following is a summary of certain U.S. federal income tax consequences to the Debtors and to certain holders of Claims that are expected to result from implementation of the Plan. This discussion is based on the Internal Revenue Code, Treasury regulations in effect on the date of this Disclosure Statement, and administrative and judicial interpretations thereof that are available on or before such

-13-

date. Pending tax legislation has not been analyzed and is not part of this discussion because it has not become law as of yet. It is unclear whether the Debtors will receive a benefit or detriment from such legislation. All of the following is subject to change, which change could apply retroactively and could affect the federal income tax consequences described below. There can be no assurance that the IRS will not take a contrary view to one or more of the issues discussed below. No ruling has been applied for or received from the IRS with respect to any of the tax aspects of the Plan, and no opinion of counsel has been requested or received by the Debtors with respect thereto. The following summary is for general information only and does not purport to address all of the U.S. federal income tax consequences that may be applicable to any particular holder of a Claim. The tax consequences to holders may vary based upon the individual circumstances of each holder.

(b) In addition, this discussion does not address any aspect of local, state or foreign taxation, or any estate or gift tax consequences of the Plan. The following assumes that the Plan will be implemented as described in the Plan and does not address the tax consequences if the Plan is not implemented.

THE TAX CONSEQUENCES OF THE PLAN ARE POTENTIALLY COMPLEX AND SUBJECT TO SIGNIFICANT UNCERTAINTIES. THIS DISCUSSION DOES NOT CONSTITUTE TAX ADVICE OR A TAX OPINION CONCERNING THE MATTERS DESCRIBED. THERE CAN BE NO ASSURANCE THAT THE INTERNAL REVENUE SERVICE OR ANY OTHER TAXING AUTHORITY WILL NOT CHALLENGE ANY OR ALL OF THE TAX CONSEQUENCES DESCRIBED HEREIN, OR THAT SUCH A CHALLENGE, IF ASSERTED, WOULD NOT BE SUSTAINED. EACH HOLDER OF A CLAIM IS URGED TO CONSULT WITH ITS OWN TAX ADVISOR REGARDING

-14-

THE FEDERAL, STATE, LOCAL, FOREIGN OR OTHER TAX CONSEQUENCES OF
THE PLAN.

### Tax Consequences to the Holders of Claims

(a) The federal income tax consequences of the Plan to a holder of a Claim will depend
upon several factors, including but not limited to: (i) whether the holder's Claim, or a
portion thereof, constitutes a Claim for principal or interest; (ii) the origin of the
holder's Claim; (iii) the type of consideration received by the holder in exchange for
the Claim; (iv) whether the holder is a resident of the United States for tax purposes;
(v) whether the holder has taken a bad-debt deduction or worthless-security deduction
with respect to its Claim; and (vi) whether the holder receives distributions under the
Plan in more than one taxable year.

(b) Generally, a holder of a Claim will recognize a gain or loss equal to the "amount
realized" which is equal to the sum of the Cash and the fair market value of any other
consideration received under the Plan in respect of a holder's Claim less its basis. The
character of any recognized gain or loss (e.g., ordinary income or short-term or long-
term capital gain or loss) will depend upon the status of the holder, the nature of the
Claim in its hands, the purpose and circumstances of its acquisition, the holder's
holding period of the Claim, and the extent to which the holder previously claimed a
deduction for the worthlessness of all or a portion of the Claim.

**HOLDERS OF CLAIMS SHOULD CONSULT THEIR OWN TAX ADVISORS
CONCERNING THE RECOGNITION OF GAIN OR LOSS, FOR FEDERAL
INCOME TAX PURPOSES, ON THE SATISFACTION OF THEIR CLAIMS.**

(c) Payors of interest, dividends and certain other reportable payments are generally
required to withhold a percentage of such payments if the payee fails to furnish such

payee's correct taxpayer identification number (social security number or employer identification number) to the payor. The Post-Confirmation Debtors may be required to withhold a portion of any payments made to a holder of an Allowed Claim who does not provide its taxpayer identification number.

## Release of Liens

The Secured Creditor shall receive replacement liens without further action on its part to the extent necessary to secure its interest against the Reorganized Debtors. The Secured Creditor shall be entitled to file any and all necessary documents to protect its secured interests, and the Debtors shall cooperate with all reasonable requests for this purpose.

## DISCHARGE OF DEBTS

Confirmation of the Plan does not discharge any debt provided for in the Plan until the Bankruptcy Court grants a discharge on completion of all payments under the Plan, or as otherwise provided in Section 1141(d)(5) of the Bankruptcy Code. The Debtors will not be discharged from any debt excepted from discharge under Section 523 of the Bankruptcy Code, except as provided in Rule 4007 of the Federal Rules of Bankruptcy Procedure.

## LIMITATION OF LIABILITY; INJUNCTION

**To the extent permitted by Section 1125(e) of the Bankruptcy Code, on the Confirmation Date, neither the Debtors nor their counsel or agents shall have incurred or shall incur any liability to any holder of a Claim or any other person or entity for any act or omission in connection with, or arising out of, the Disclosure Statement, the pursuit of approval of the Disclosure Statement, the pursuit of Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct, gross negligence, self-dealing or breach of fiduciary duty. Nothing herein shall abrogate applicable disciplinary rules.**

At the Confirmation Hearing, the Debtors will be seeking an injunction as of the Effective Date protecting the Debtors/Reorganized Debtors and their estate and assets, except as provided in the Plan, until the entry of an order by the Bankruptcy Court granting the Debtors a discharge upon performance of all their duties and obligations under the Plan. The injunction will be sought because under the Bankruptcy Code [11 U.S.C. §1141(d)(5)] where, as here, the Debtors in a chapter 11 case are individuals, confirmation of the Plan does not discharge any debt provided for in the plan until the Bankruptcy Court grants a discharge upon completion of all payments under the plan. Therefore, at the Confirmation Hearing, the Debtors will request that the Bankruptcy Court enter a Confirmation Order providing that, as of the Effective Date, as to every holder of a debt or Claim against the Debtors, such holder shall be enjoined from interfering with the Debtors'/Reorganized Debtors' ability to carry out the terms of the Plan or enforcing any remedy against the Debtors or their estate with respect to any Claim. The order will further provide that in the event of a default by the Debtors/Post-Confirmation Debtors under the Plan, a Claimant may make an appropriate application to the Bankruptcy Court seeking relief from such injunction.

Injunction: As of the Effective Date, except as otherwise expressly provided in the Plan or the Confirmation Order, all entities shall be permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from asserting against the Debtors or the Reorganized Debtors or their assets, property and estate, any other or further Claims, debts, obligations, rights, suits, judgments, damages, actions, causes of action, remedies, and liabilities of any nature whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, existing as of the Effective Date or thereafter arising, at law, in equity or otherwise relating to the Debtors or

-17-

**Reorganized Debtors or any of their assets, property and estate, based upon any act or omission, transaction, agreement, event, or other occurrence taking place or existing on or prior to the Effective Date.**

## ADDITIONAL INFORMATION

Requests for information and additional copies of this Disclosure Statement, the Ballots or Provisional Ballots, and the other materials delivered together herewith, and all deliveries, correspondence and questions, as the case may be, relating to the Plan should be directed to the Debtors' counsel, Bronson Law Offices, P.C., 480 Mamaroneck Ave., Harrison, NY 10528, attn.: H. Bruce Bronson, Esq. at 914-269-2530; hbbronson@bronsonlaw.net.

**DATED:**      Harrison, New York
                June 29, 2026

*/s/ Krishna Bhagwandeen*
/s/ Mahadai Bhagwandeen                    BRONSON LAW OFFICES, P.C.

                                           By:    */s/ H. Bruce Bronson*
                                                  H. Bruce Bronson
                                                  Bankruptcy Counsel to the
                                                  Debtors and Debtors-in-Possession

-18-

# EXHIBIT
# A

BRONSON LAW OFFICES, P.C.
Counsel for the Debtor
480 Mamaroneck Ave.
Harrison, NY 10528
(914) 269-2530 (PH)
(888) 908-6906 (Fax)
H. Bruce Bronson, Esq.
hbbronson@bronsonlaw.net

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
In re:

                                    Chapter 11

Krishna Bhagwandeen and
Mahadai Bhagwandeen                       Case No.:25-40906 (ESS)
                   Debtors.
------------------------------------------------------x

## PLAN OF REORGANIZATION

Krishna Bhagwandeen and Mahadai Bhagwandeen, debtors and debtors-in-possession (the

"**Debtors**") propose the following Chapter 11 Plan of Reorganization (the "**Plan**") pursuant to

Title 11 of the United

States Code:

## ARTICLE 1

## DEFINITIONS

For the purposes of this Plan, and Disclosure Statement simultaneously filed by the

Debtors, the following terms shall have the respective meanings set forth below (such meanings

to be equally applicable to the singular and plural forms of the terms defined, unless the context

otherwise requires):

1. "**Administrative Expense Claim**" means a Claim for the costs and expenses of

    administering this Chapter 11 case allowed under Sections 503(b) or 330(a) of the

Bankruptcy Code and that are entitled to priority under Section 507(a)(2) of the Bankruptcy Code, including compensation for all professional services and reimbursement of expenses awarded by the Bankruptcy Court.

2. "**Allowed Claim**" means (1) a Claim timely filed before the Bar Date and (a) as to which no objection has been filed within the time fixed in the Plan or (b) as to which any objection that is filed has been subsequently settled, waived, withdrawn or denied by the Bankruptcy Court, (2) a Claim listed on the Bankruptcy Schedules and not designated as contingent, unliquidated or disputed, or (3) a Claim allowed pursuant to the Bankruptcy Code. "Bankruptcy Code" or "Code" shall mean the Bankruptcy Code, Title 11 U.S.C. Section 101 et seq., as amended from time to time and applicable to this case.

3. "**Bankruptcy Court**" means the United States Bankruptcy Court for the Eastern District of New York or any other court exercising jurisdiction in this case.

4. "**Bankruptcy Schedules**" means the schedules of assets and liabilities, lists and statements of financial affairs, together with all amendments thereto, filed by the Debtor pursuant to Bankruptcy Rule 1007.

5. "**Bar Date**" means July 18, 2025, the deadline by which proofs of Claim are required to be filed with the Clerk of the Bankruptcy Court in this case, with the exception of the Claims of governmental units.

6. "**Cash**" means cash or cash equivalent (a) of the Reorganized Debtor on hand as of the Effective Date and/or (b) realized from the Debtor's or Reorganized Debtor's business operations or employment following the Effective Date.

7. "**Claim**" shall mean a right to payment as set forth in Section 101(5) of the Bankruptcy Code.

8. "**Claimant**" shall mean the holder of a Claim.

-2-

9.  "**Confirmation**" means approval of this Plan by the Confirmation Order of the Bankruptcy Court following a hearing and notice thereof in accordance with the Bankruptcy Code and Bankruptcy Rules.

10.  "**Confirmation Date**" shall mean the date of entry of the Confirmation Order.

11.  "**Confirmation Hearing Date**" shall mean the date set by the Bankruptcy Court for the hearing on confirmation of the Plan.

12.  "**Confirmation Order**" shall mean the order of the Bankruptcy Court pursuant to Section 1129 of the Bankruptcy Code confirming the Plan.

13.  "**Debtor**" means the individuals Krishna Bhagwandeen and Mahadai Bhagwandeen.

14.  "**Debtor-in-Possession Account**" or "**DIP Account**" means the bank account(s) the Debtor established pursuant to U.S. Trustee guidelines shortly after filing for bankruptcy.

15.  "**Disputed Claim**" means:

(a)  any Claim that is listed in the Debtor's Bankruptcy Schedules as being disputed, contingent or unliquidated with respect to which no Proof of Claim has been timely filed; and

(b)  any filed Claim with respect to which an objection to the allowance thereof, in whole or in part, has been interposed within the applicable period fixed by the Bankruptcy Court and such Claim has not become an Allowed Claim.

16.  "**Effective Date**" means the date upon which the Confirmation Order becomes a Final Order.

17.  "**Final Order**" means an order of the Bankruptcy Court which has not been reversed, stayed, modified or amended and as to which (a) any right to appeal or seek certiorari,

-4-

review or rehearing has been waived or (b) the time to appeal or seek certiorari, review or rehearing has expired and as to which no appeal or petition for certiorari, review or rehearing is pending.

18. "**Secured Lender**" means New Rez LLC d/b/a Shellpoint Mortgage Servicing [POC 8-1], that holds the mortgage on the Property.

19. "**Secured Mortgage**" means the mortgage held by New Rez LLC d/b/a Shellpoint Mortgage Servicing in the amount of approximately $98,688.97 filed in its proof of claim [POC #8-1].

20. **"Government Bar Date"** means the deadline by which governmental units have to file a proof of claim with the clerk of the Court in this case, which is November 17, 2025, at 5:00 p.m.

21. "**Impaired**" means impairment of a class of Claims under Section 1124 of the Bankruptcy Code.

22. "**Petition Date**" means February 21, 2025, the date on which the Debtor filed his voluntary bankruptcy petition.

23. "**Plan**" means this Chapter 11 plan of reorganization filed by the Debtor.

24. "**Priority Claim**" means all Claims that are entitled to priority pursuant to Bankruptcy Code Section 507(a), with the exception of Administrative Expense Claims.

25. "**Priority Tax Claim**" means all Claims that are entitled to priority pursuant to Bankruptcy Code Sections 502(i) and 507(a)(8).

26. **"Pro Rata"** means with respect to a class member, in the same proportion as the amount of such member's Allowed Claim over the total Allowed Claims in such class.

-5-

27. **"Property"** means the single family property located at 97-22 108th Street, South Richmond Hill, NY 11419.

28. **"Reorganized Debtor"** means the Debtor after the Effective Date.

29. "**Secured Claim**" means a Claim secured by a lien, judgment lien, mortgage or security interest on property of the Debtor's estate to the extent of the value of the property of the Debtor's estate securing such Claim, and any valid and enforceable right of setoff.

30. "**Secured Creditor**" means NewRez LLC d/b/a Shellpoint Mortgage Servicing.

31. **"Unsecured Claim"** means a Claim that is not a Secured Claim, Administrative Expense Claim, Priority Claim, or Priority Tax Claim.

32. "**Unsecured Creditor**" means the holder of an Allowed Unsecured Claim.

33. "**U.S. Trustee Fees**" means all fees payable pursuant to 28 U.S.C. § 1930, and statutory interest thereon.

All rules of construction contained in Section 102 of the Bankruptcy Code apply in the construction of the Plan.

## ARTICLE 2
## UNCLASSIFIED ADMINISTRATIVE EXPENSE  CLAIMS, PRIORITY TAX CLAIMS AND, U.S. TRUSTEE FEES

Pursuant to section 1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Expense Claims and Priority Tax Claims, which shall be afforded the following treatment:

1. **Administrative Expense Claims**. All Allowed Administrative Expense Claims shall be paid in full in Cash on the later of the Effective Date, and entry of an order of the Bankruptcy Court allowing the same, unless otherwise agreed upon by the parties. The primary Administrative Expense Claims could consist of fees approved by the Court

-5-

-6-

that are payable to bankruptcy counsel. The amounts of Administrative Expense Claims are not currently known and consist mainly of the Debtors' legal fees which are expected to be approximately $15,000.

2. **Priority Tax Claims**. Allowed Priority Tax Claims shall be paid in full in Cash on the Effective Date of the Chapter 11 Plan as provided in their respective proofs of claim. There is only one Priority Tax Claim of $669.00 that will be paid in cash to New York State Department of Taxation and Finance on the Effective Date. The Internal Revenue Service has filed a $0 Claim.

3. **U.S. Trustee Fees.** Any unpaid U.S. Trustee Fees shall be paid in Cash on the Effective Date.

## ARTICLE 3
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

**Class 1-Allowed Priority Claims.** Class 1 consists of all Allowed Priority Claims, other than Priority Tax Claims.

**Treatment-** The Allowed Priority Claims, if any, shall be paid in full in Cash on the Effective Date. There are no known priority claims, other than Priority Tax Claims as discussed above.

**Right to Vote.** Class 1 is not Impaired under the Plan and therefore is not entitled to vote to accept or reject the Plan.

2. **Class 2-Allowed Secured Claims.** Class 2 consists of all Allowed Secured Claims. There is one Secured Claim for the Secured Mortgage on the Debtors' residence payable to NewRez LLC d/b/a Shellpoint Mortgage Servicing ("**Secured Lender**") in the Allowed Amount of $98,688.97 (the "**Mortgage**") which is not in arrears and will be paid in accordance with the contract, i.e. note and mortgage.

-6-

**Treatment:** The Mortgage will continue to be paid in accordance with its contractual terms.

**Right to Vote.** The Allowed Secured Debt will be payable in accordance with its terms and therefore is not impaired and will not be entitled to vote.

3.      **Class 3-Allowed Unsecured Claims.** Class 3 Allowed Unsecured Claims have been broken down into two subclasses, Class 3A and Class 3B and consist of the following, subject to reduction by objection of the Debtors or agreement of the parties within 90 days of the effective date:

**CLASS 3A**

| Creditor | POC or Petition # | Amount of Claim | Allowed/Not Allowed | Monthly Amount to Be Paid |
|---|---|---|---|---|
| American Exp | POC 2 | $1,298.39 | Allowed | $21.64 |
| American Exp | POC 3 | $885.49 | Allowed | $14.80 |
| JP Morgan Chase | POC 3-1 | $1,125.97 | Allowed | $18.80 |
| JP Morgan Chase | POC 6-1 | $11,698.07 | Allowed | $195.00 |
| Discover Bank | POC 7 | $7,085.23 | Allowed | $118.09 |
| Capital One | POC 8 | $281.45 | Allowed | $281.45 |
| Capital One | POC 11-1 | $4,431.13 | Allowed | $73.85 |
| Verizon | POC 12-1 | $1,111.58 | Allowed | $18.53 |
|  | Total | **$27,917.31** |  | **$742.16** |

**CLASS 3B**

| Creditor | POC or Petition # | Amount of Claim | Allowed/Not Allowed | Monthly Amount to Be |
|---|---|---|---|---|

|  |  |  |  | **Paid** |
| --- | --- | --- | --- | --- |
| Franpo Realty, LLC | POC 12-1 | $135,555.99 (reduced to $125,000 by agreement) | Allowed | $2,084 |

**Treatment-** The Class 3A Allowed Unsecured Claims will be paid monthly (except for the de minimis Claim of Capital One for $281.45, which will be paid on the Effective Date) over approximately 60 months, beginning on the Effective Date. The Class 3B Allowed Unsecured Claim will be payable monthly for 60 months beginning on the Effective Date, based upon agreement with the Creditor.

**Right to Vote.** Class 3A is Unimpaired and not entitled to vote to accept or reject the Plan because the Claims will be paid in full over a five-year period. Class 3B is Impaired and entitled to vote. To the extent there are any holders of claims that were listed in the Schedules as disputed that have failed to file a proof of claim, they will not be entitled to a distribution and are not included herein. Unless otherwise ordered by the Bankruptcy Court for cause, only the Debtors shall have exclusive standing to file and prosecute objections to Claims. All such objections shall be filed and served no later than 90 days after the Effective Date in accordance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

## ARTICLE 4
## IMPLEMENTATION OF THE PLAN

Payments to holders of Allowed Claims under the Plan will be made by the Debtors/Reorganized Debtors from (a) Cash on hand as of the Effective Date; and (b) Cash realized from the Debtors'/Reorganized Debtors' income from their furniture business. The Debtors believe based on their salaries and their ownership of their furniture store, they will have sufficient funds to make the payments.

-8-

Professional fees for services rendered and expenses incurred by the Debtors' attorney subsequent to the Effective Date in connection with the Plan or the Debtors'/Reorganized Debtors' chapter 11 case, may be paid by the Debtors without prior court approval, to the extent that Section 1123(a)(6) of the Bankruptcy Code is applicable.

The Plan may be altered or modified by the Debtors at any time before the substantial consummation of the Plan, as provided in Sections 1101(a) and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, which authorizes the proponent of a plan of reorganization to modify such plan at any time prior to confirmation of the plan so long as the plan, as modified, continues to meet certain requirements therein.

## ARTICLE 5
## PROVISIONS GOVERNING DISTRIBUTIONS

1. **Disbursements.** All distributions under the Plan shall be made by the Debtor/Reorganized Debtor as provided in Article 3 hereof. Payments to be made monthly under the Plan will be made in Cash on or about the first of each month.

2. **Rights and Powers of the Debtor.** The Debtor/Reorganized Debtor shall be empowered to (i) execute all agreements, instruments and other documents necessary to perform their duties under the Plan, (ii) make all distributions contemplated by the Plan, (iii) prosecute, settle and enforce any objections to Claims or other preserved causes of action on behalf of the Debtor's estate as set forth in the Plan, and (iv) exercise such other powers as may be deemed necessary and proper to implement the Plan.

3. **Claim Objection Deadline.** Unless otherwise ordered by the Bankruptcy Court for cause, after the Effective Date only the Debtor shall have standing to file and prosecute objections to Claims. All such objections shall be filed and served no later than 90 days after the Effective

Date in accordance with the applicable provisions of the Bankruptcy Code and Bankruptcy
Rules.

4. **No Distribution Pending Allowance.** Notwithstanding any other provision of the Plan, no
payment or distribution shall be made with respect to any portion of a Disputed Claim under
the Plan unless and until such Disputed Claim becomes an Allowed Claim. Instead, any monies
that otherwise would be paid if a Disputed Claim were Allowed shall be retained by the
Debtor/Reorganized Debtor until such time as the Claim is finally Allowed, at which time such
withheld Cash shall be paid to the holder of such Allowed Claim or, to the extent that such
Disputed Claim is not Allowed, Pro Rata to the holders of Allowed Class 3 Unsecured Claims.

5.  **Undeliverable Distributions.** If a distribution to the holder of any Allowed Claim is returned
as undeliverable, no further distribution hereunder shall be made to such Claimant unless such
Claimant notifies the Debtor in writing of its correct address within 180 days after the date of
such distribution. Any undeliverable distribution shall be distributed Pro Rata to the remaining
holders of Allowed Class 3 Claims. Debtor shall make reasonable efforts to locate holders of
Allowed Claims.

**ARTICLE 6**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**Executory Contracts and Unexpired Leases.** To the extent the Debtor is a party
to any executory contracts or unexpired leases which have not otherwise been assumed or rejected
prior to the Effective Date, the Confirmation Order shall constitute an Order authorizing the
assumption of such Executory Contracts or unexpired leases pursuant to Section 365 of the
Bankruptcy Code.

-10-

In the event any lease or executory contract is to be assumed that is not paid currently, the Debtor will, as a condition of assumption, cure the default by making payment of the amounts owed. Any party objecting to the assumption or cure amount shall have until ten days prior to the Confirmation Hearing date to oppose such assumption or cure amount. The Debtor is not aware of any executory contracts or unexpired leases on which it is a lessee and accordingly believes that he owes no cure amounts under Section 365 of the Bankruptcy Code.

**This paragraph constitutes notice to any party having an executory contract or unexpired lease with Debtor, that Debtor will pay no cure amounts unless (a) the non-debtor party files and serves a statement setting forth the cure amount and objecting to the Plan on or before the date to object to Confirmation of the Plan or (b) the Court awards such cure amount.**

### ARTICLE 7
### MISCELLANEOUS PROVISIONS

1. **Orders in Aid of Consummation.** Pursuant to Sections 105, 1141, 1142 and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more orders in aid of implementation of the Plan.

2. **Compliance with Tax Requirements.** In connection with the Plan, the Debtor/Reorganized Debtor shall comply with all withholding and reporting requirements imposed by federal, state, and local taxing authorities, and distributions under the Plan shall be subject to such withholding and reporting requirements.

3. **Due Authorization by Creditors.** Each and every holder of an Allowed Claim who accepts a distribution provided for under the Plan warrants that it is the lawful owner of such Claim and is authorized to accept the distribution provided for in the Plan on account of such Claim and that there are no outstanding liens, encumbrances,

-11-

commitments, agreements, or understandings, express or implied that may or can in any way defeat or modify the rights released, conveyed or modified by the Plan, or obligations undertaken by such creditor under the Plan.

4. **Filing Additional Documents**. Except as otherwise provided in the Plan, on or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

5. **Section Headings.** The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

6. **Computation of Time.** In computing any period of time prescribed or allowed by the Plan, the provision of Bankruptcy Rule 9006(a) shall apply.

7. **Successors and Assigns.** The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or permitted assign of such entity.

8. **Notices.** All notices and other communications to be given or made hereunder shall be in writing and shall be deemed to have been given or made when mailed or as otherwise set forth herein:

(a)      to the Debtor/Reorganized Debtor at: Bronson Law Offices, P.C., 480 Mamaroneck Avenue, Harrison, NY 10528, Attention H. Bruce Bronson, Esq.;

(b)      if to any Claimant at (i) the address set forth on the respective proofs of Claim filed by such Claimants; (ii) the addresses set forth in any written notices of address changes delivered to the Debtor/Reorganized Debtor after the Effective Date; or (iii) the

-12-

address reflected in the Bankruptcy Schedules if no proof of Claim is filed and the Debtor has not received a written notice of a change of address; and

(c)     if to any entity that has filed a notice of appearance, at the address(es) set forth on such notice of appearance.

9.  **Governing Law.** The rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the Bankruptcy Code and Bankruptcy Rules and the laws of the State of New York, as applicable.

10. **Other Actions.** Nothing contained herein shall prevent the Debtor from taking such action as may be reasonably necessary to carry out this Plan, although such actions may not specifically be provided for within the Plan.

11. **Severability.** In the event any provision of the Plan is determined to be unenforceable such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of the Plan.

12. **Causes of Action.** The Debtor is not aware of any causes of action that his bankruptcy estate may have, including actions under Chapter 5 of the Bankruptcy Code. Nevertheless, he fully reserves his right to pursue any causes of action post confirmation, and any setoff rights arising thereunder.

13. **Replacement Liens.** The Secured Creditor shall receive replacement liens without further action on their part to the extent necessary to secure their interest against the Reorganized Debtor. The Secured Creditor shall be entitled to file any and all necessary documents to protect their secured interests and the Debtor shall cooperate with all reasonable requests for this purpose.

-13-

## ARTICLE 8
## <u>DISCHARGE OF DEBTS</u>

Confirmation of the Plan does not discharge any debt provided for in the Plan until the

Bankruptcy Court grants a discharge on completion of all payments under the Plan, or as

otherwise provided in Section 1141(d)(5) of the Bankruptcy Code. The Debtor will not be

discharged from any debt excepted from discharge under Section 523 of the Bankruptcy Code,

except as provided in Rule 4007 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE 9
## <u>LIMITATION OF LIABILITY; INJUNCTION</u>

To the extent permitted by Section 1125(e) of the Bankruptcy Code, on the Confirmation

Date, neither the Debtor nor his counsel or agents shall have incurred or shall incur any liability to

any holder of a Claim or any other person or entity for any act or omission in connection with, or

arising out of, the Disclosure Statement, the pursuit of approval of the Disclosure Statement, the

pursuit of Confirmation of the Plan, the consummation of the Plan or the administration of the

Plan or the property to be distributed under the Plan, except for willful misconduct, gross

negligence, self-dealing or breach of fiduciary duty. Nothing herein shall abrogate applicable

disciplinary rules.

**Injunction: As of the Effective Date, except as otherwise expressly provided in this**

**Plan or the Confirmation Order, all entities shall be permanently, forever and completely**

**stayed, restrained, prohibited, barred and enjoined from asserting against the Debtor or the**

**Reorganized Debtor or his assets, property and estate, any other or further Claims, debts,**

**obligations, rights, suits, judgments, damages, actions, causes of action, remedies, and**

**liabilities of any nature whatsoever, whether known or unknown, foreseen or unforeseen,**

-14-

**liquidated or unliquidated, fixed or contingent, matured or unmatured, existing as of the Effective Date or thereafter arising, at law, in equity or otherwise relating to the Debtor or Reorganized Debtor or any of his assets, property and estate, based upon any act or omission, transaction, agreement, event, or other occurrence taking place or existing on or prior to the Effective Date.**

## ARTICLE 10
### RETENTION OF JURISDICTION

After the entry of the Confirmation Order, the Bankruptcy Court may retain jurisdiction until this Chapter 11 bankruptcy case is closed to perform the following actions:

(a) Ensure that the Plan is fully consummated;

(b) Resolve all matters arising under or relating to the Plan, including, without limitation, its enforcement and interpretation;

(c) Allow, disallow, determine, liquidate or classify, any Claims;

(d) Grant or deny all applications for allowance of compensation and reimbursement of expenses by the professionals retained in this bankruptcy case;

(e) Resolve any motions or applications still pending prior to the Effective Date;

(f) Enter such orders as may be necessary or appropriate to implement or consummate the Plan and all contracts, deeds, instruments made or created in furtherance of the Plan or to enforce all orders, judgments and rulings entered in connection with this bankruptcy case, including an order granting the Debtor's discharge upon certification of the completion of all distributions under the Plan; and

(g) Enter a discharge order and Final Decree concluding this bankruptcy case.

## ARTICLE 11
## CLOSING THE CASE

1.      **Bankruptcy Fees.** All fees payable to the Office of the United States Trustee pursuant to

28 U.S.C. § 1930 and any applicable interest pursuant to 31 U.S.C. § 3717, shall be paid through

the entry of a Final Decree, or conversion or dismissal of the Debtor's Chapter 11 case, whichever

is earlier.

2.      **Post-Confirmation Reports.** After Confirmation, the Debtor shall file quarterly status

reports regarding the implementation of the Plan and schedule such status conferences as may be

necessary until the case is closed.

3.      **Closing the Case.**  Within 14 days following the full administration of the Debtor's estate,

the Debtor shall file on notice to the United States Trustee, an application and a proposed order

for a Final Decree pursuant to Bankruptcy Rule 3022. The Debtor may close the case after the

Effective Date and reopen the case when their estate is fully administered in accordance with this

Plan, in order to obtain a discharge.

**DATED:** Harrison, New York
          June 29, 2026

*/s/* Krishna Bhagwandeen
Krishna Bhagwandeen

/s/ Mahadai Bhagwandeen
 Mahadai Bhagwandeen                          BRONSON LAW OFFICES, P.C.

                                     By:     */s/ H. Bruce Bronson*
                                              H. Bruce Bronson
                                              Bankruptcy Counsel to the
                                             Debtor and Debtor-in-Possession

-16-

# EXHIBIT
# B

Year One Projections

| Krishna Bhagwandeen and Mahadai Bhagwandeen; case no.:26-40906 | | Sep-26 | Oct-26 | Nov-26 | Dec-26 | Jan-27 | Feb-27 | Mar-27 | Apr-27 | May-27 | Jun-27 | Jul-27 | Aug-27 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **INCOME** | | | | | | | | | | | | | |
| Krishna-Salary | | $ 2,022.00 | $ 2,022.00 | $ 2,022.00 | $ 2,022.00 | $ 2,022.00 | $ 2,022.00 | $ 2,022.00 | $ 2,022.00 | $ 2,022.00 | $ 2,022.00 | $ 2,022.00 | $ 2,022.00 |
| Mahadai-Salary | | $ 2,022.00 | $ 2,022.00 | $ 2,022.00 | $ 2,022.00 | $ 2,022.00 | $ 2,022.00 | $ 2,022.00 | $ 2,022.00 | $ 2,022.00 | $ 2,022.00 | $ 2,022.00 | $ 2,022.00 |
| Social Security | | $ 120.00 | $ 120.00 | $ 120.00 | $ 120.00 | $ 120.00 | $ 120.00 | $ 120.00 | $ 120.00 | $ 120.00 | $ 120.00 | $ 120.00 | $ 120.00 |
| Draw from Business | | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 |
| Cash on Hand | $8,500 | | | | | | | | | | | | |
| **Total** | $ 8,500.00 | $ 6,164.00 | $ 6,164.00 | $ 6,164.00 | $ 6,164.00 | $ 6,164.00 | $ 6,164.00 | $ 6,164.00 | $ 6,164.00 | $ 6,164.00 | $ 6,164.00 | $ 6,164.00 | $ 6,164.00 |
| **EXPENSES** | | | | | | | | | | | | | |
| Mortgage | | $ 1,498.88 | $ 1,498.88 | $ 1,498.88 | $ 1,498.88 | $ 1,498.88 | $ 1,498.88 | $ 1,498.88 | $ 1,498.88 | $ 1,498.88 | $ 1,498.88 | $ 1,498.88 | $ 1,498.88 |
| Household Expenses | | $ 1,548.00 | $ 1,548.00 | $ 1,548.00 | $ 1,548.00 | $ 1,548.00 | $ 1,548.00 | $ 1,548.00 | $ 1,548.00 | $ 1,548.00 | $ 1,548.00 | $ 1,548.00 | $ 1,548.00 |
| **Total Monthly Expenses** | | $ 3,046.88 | $ 3,046.88 | $ 3,046.88 | $ 3,046.88 | $ 3,046.88 | $ 3,046.88 | $ 3,046.88 | $ 3,046.88 | $ 3,046.88 | $ 3,046.88 | $ 3,046.88 | $ 3,046.88 |
| | | | | | | | | | | | | | |
| Unsecured  Payments | | $ 2,826.00 | $ 2,826.00 | $ 2,826.00 | $ 2,826.00 | $ 2,826.00 | $ 2,826.00 | $ 2,826.00 | $ 2,826.00 | $ 2,826.00 | $ 2,826.00 | $ 2,826.00 | $ 2,826.00 |
| Administrative Expense | $ 10,000.00 | | | | | | | | | | | | |
| **Total-Initial Payments** | $ 10,000.00 | | | | | | | | | | | | |
| Net Income | | $ 291.12 | $ 291.12 | $ 291.12 | $ 291.12 | $ 291.12 | $ 291.12 | $ 291.12 | $ 291.12 | $ 291.12 | $ 291.12 | $ 291.12 | $ 291.12 |
| Reserve | $ (1,500.00) | $ 291.12 | $ 582.24 | $ 873.36 | $ 1,164.48 | $ 1,455.60 | $ 1,746.72 | $ 2,037.84 | $ 2,328.96 | $ 2,620.08 | $ 2,911.20 | $ 3,202.32 | $ 3,493.44 |

Five Year Projections

## Krishna Bhagwandeen and Mahadai Bhagwandeen; case no.:26-40906

| | | Year One | Year two | Year three | Year four | Year five |
|---|---|---|---|---|---|---|
| **INCOME** | | | | | | |
| Krishna-Salary | | $ 24,264.00 | $ 24,264.00 | $ 24,264.00 | $ 24,264.00 | $ 24,264.00 |
| Mahadai-Salary | | $ 24,264.00 | $ 116,400.00 | $ 116,400.00 | $ 116,400.00 | $ 116,400.00 |
| Social Security | | $ 1,440.00 | $ 1,440.00 | $ 1,440.00 | $ 1,440.00 | $ 1,440.00 |
| Draw from Business | | $ 24,000.00 | $ 24,000.00 | $ 24,000.00 | $ 24,000.00 | $ 24,000.00 |
| Cash on Hand | $8,500 | | | | | |
| **Total** | $ 8,500.00 | $ 73,968.00 | $ 73,968.00 | $ 73,968.00 | $ 73,968.00 | $ 73,968.00 |
| **EXPENSES** | | | | | | |
| Mortgage | | $ 17,986.56 | $ 17,986.56 | $ 17,986.56 | $ 17,986.56 | $ 17,986.56 |
| Household Expenses | | $ 18,576.00 | $ 21,444.00 | $ 21,444.00 | $ 21,444.00 | $ 21,444.00 |
| **Total Monthly Expenses** | | $ 36,562.56 | $ 36,562.56 | $ 36,562.56 | $ 36,562.56 | $ 36,562.56 |
| | | | | | | |
| Unsecured Payments | | $ 33,912.00 | $ 33,912.00 | $ 33,912.00 | $ 33,912.00 | $ 33,912.00 |
| Administrative Expense | $ 10,000.00 | | | | | |
| **Total-Initial Payments** | $ 10,000.00 | | | | | |
| Net Income | | $ 3,493.44 | $ 17,337.84 | $ 17,337.84 | $ 17,337.84 | $ 17,337.84 |
| Reserve | $ (1,500.00) | $ 3,493.44 | $ 6,986.88 | $ 10,480.32 | $ 13,973.76 | $ 17,467.20 |

# EXHIBIT
# C

**BALLOT**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
**-------------------------------------------------------x**
**In re:**

                                      **Chapter 11**

**Krishna Bhagwandeen and**
**Mahadai Bhagwandeen**                     **Case No.:25-40906 (ESS)**
               **Debtors.**
**-------------------------------------------------------x**

### CLASS [    ] BALLOT FOR ACCEPTING OR REJECTING PLAN OF REORGANIZATION

Bronson Law Offices, P.C., counsel for Krishna Bhagwandeen and Mahadai Bhagwandeen (the "Debtors"), filed a Plan of Reorganization dated \*\*\*\*\*, 2026 (the "Plan") for the Debtors in this case. The Court has conditionally approved a disclosure statement with respect to the Plan (the "Disclosure Statement"). The Disclosure Statement provides information to assist you in deciding how to vote your ballot. If you do not have a copy of the Disclosure Statement, you may obtain one from:

> Bronson Law Offices, P.C.
> 480 Mamaroneck Ave.
> Harrison, NY 10528
> 914-269-2530 (tel.)
> hbbronson@bronsonlaw.net

**You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Your claim has been placed in Class ** under the Plan. If you hold claims or equity interests in more than one class, you will receive a ballot for each class in which you are entitled to vote.**

**If your ballot is not received by Bronson Law Offices, P.C. on or before 5:00 p.m. on \*\*\*\*\*\*, 2026, and such deadline is not extended, your vote will not count as either an acceptance or rejection of the Plan.**

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote.**

**The undersigned, the holder of a Class ** claim against the Debtors in the unpaid amount of** $\*\*\*\*\*\*\*\*\*,

☐ **Accepts the Plan**

☐ **Rejects the Plan**

**Dated:**  _____

**Signature:** _____ **Title:** _____ **(if corporation or partnership)**

**Print or type name:** _____

**Address:**         _____

                  _____

             **Return this ballot to:** Bronson Law Offices, P.C.
                            480 Mamaroneck Ave.
                            Harrison, NY 10528
                            914-269-2530 (tel.)
                            888-908-6906 (fax)
                            hbbronson@bronsonlaw.net